May it please the Court, Vicki Smith for Emert. The underlying case in this situation involved a competitive bidding process with a request for quotation by Artisan, a complicated bid back by Emert, and interaction between private parties. Emert was then selected by Artisan as the primary carrier on moves, all moves, relating to metal presses weighing in excess of 1,000 pounds for this particular action. As the record shows, this project is not putting materials on a truck and trucking them across country. It's a logistical situation that requires a special undertaking, building things to transport such equipment, route surveys to accomplish such things, engineering assessments, working with state authorities to see if these things can even be transported. Okay, that's the background. Emert performed some of those activities under the contract and was not paid for all of those activities. That's the first and second claims that we had. Then Artisan terminated the contract before the contract was for basically initially breach of contract, quantum merowith, and then for loss of profits for the termination. The district court granted summary judgment against us and in essence said that 49 U.S.C. 14705 was the controlling statute of limitations here and in essence preempted Emert's state law breach of contract claim. Point number one. Point number two. Well, you didn't preempt it. I thought he decided that on the merits, the state claims. I'm sorry? Didn't he decide the state claims on the merits? The district court concluded that the statute of limitations in the Transportation Act governed. Or the other claims. Governed, correct. But not the state law. Oh, correct, correct. We never got that far. The claims were dismissed because of the statute of limitations on the breach of contract claim. Counsel, I am looking at section 13.0 of the actual contract and that provides in the second line that the contract, it says until terminated by either party with or without cause by giving the other party at least 30 days prior written notice thereof. I'm sorry, Your Honor, which? I'm looking at section 13.0 of the contract, at least as has been provided to us. This is exhibit 16. Your Honor, is the contract between GM and Artisan, if I'm not mistaken? That is correct. And so the players here are Emert is the entity that's doing the transporting. Right. Artisan is the broker. Okay, but I'm kind of working backwards here. In other words, it's very clear as you look at this contract that GM had the right to terminate on 30 days notice, right? Well, we never knew that. That's an arrangement. They had the right to terminate the contract with who? With Artisan. Okay, but what's your contract? Did you have a contract with Artisan? Well, our contract, if you will. Is that the three-line letter? Yes. All right. That's the only thing we're talking about here when we're talking about the contract as well as the oral conversations. Your position is it doesn't matter whether GM could terminate its contract with Artisan or not and that you didn't know about it both? Well, that relates only to the second portion of what we're talking about here. Isn't it a fundamental point? It's almost like a sublease. If you're a subleasee, although most people would attach a copy of the master lease, you surely have to find out how long the term of the lease is. Otherwise, you're not going to sign a sublease that's longer than the term of the master lease. In this case, we'd understand that your client entered into a contract with Artisan not knowing that the contract that Artisan had with GM could be terminated on 30 days' notice with or without cause. Yes, I believe that's so. The evidence in the record is that Mr. Emert did not know. The arrangement was with Artisan on Artisan letterhead that Emert would be the primary carrier on this. What if there was no contract at all? No contract with GM? Say there was no contract at all between Artisan and GM. What would your client's position be then other than fraud in the fact of what? I'm just amazed that there was no understanding about the underlying contract because the whole thing depended on GM's need for this type of services. Right, well, and I think that the issue relates only to our lost profits claim, but the issue is the type of transportation that exists here, which is incredible, huge, heavy hauling, specialized. I understand that. I'm simply saying that your client knew that General Motors was the ultimate user of the service that it was subcontracted to provide, right? It knew it owned the property. And you're telling me that in the record, I suppose even in fact, since we're talking about a matter of law, that your client did not know how long the contract between General Motors and your other contracting party was. How long? I don't know if you're talking about it in terms of duration. Yeah, in terms of duration. Duration, no, because of the nature of the way these things get moved. But what we did know was that we were the primary carrier on all of a certain type of components, those exceeding 100,000 pounds. Okay, but say that the contract was for a day or a week. Wouldn't that have had some bearing? Damages, of course, flow from what the meeting of the minds was with respect to the parties. And I'm trying to understand what your client's understanding was with respect to that point, which is critical to damages. Well, maybe I'm missing the court's point, but what was being moved was specific equipment that was outlined in the request for proposal. So what we were hired to do was to move all of those things, and that was in essence the duration, moving all of those particular components that we were retained to do. So the time is irrelevant. Irrelevant in the sense of we simply need to get the job done. And that may depend on if we're going through Georgia, for example, and the bridges need to be shored up in order to take things across certain bridges. So you can't put a time limit on it. From my perspective, it's the components. The question is, frankly, does the, can you help us understand why it is that the judge is wrong? Well, I hope I can. The judge focused just on the one word there. Well, you only had about 24. Right, no, I, and I understand. I think there were 24, but in any event, so we do have more than that one word, and it's the nature of this particular project, and we were the primary carrier, and the next phrase that is important is on all these particular components. What does that mean, primary carrier, as opposed to, what does it mean that you're the primary carrier? Well, from the evidence in the record that was put forth by Emmer, it was that we were the ones that got to do all of those things in the request for quotation that were over 100,000 pounds as they were marked out in the request for quotation. Well, obviously it doesn't mean that you don't get any of the business. That's clear. You couldn't be primary, and it means you don't do anything. Does it mean that you get to move all of the things over 100,000, and there are other things of less than 100,000? No, no, it means that we got all of the things over 100,000. We didn't even bid on anything under 100,000. That's our specialty, but it meant that we got all of them, and under the district court's interpretation of the word primary, I think you could say that we did all of the work beforehand, all the route surveys, all the investigation, all the building of equipment, and yet the district court judge could have said, well, you weren't exclusive, so you didn't get it once they wanted to cancel the contract under the way that she interpreted the word primary. Well, isn't there an implied condition in a contract that's as sparse as this one is in wording? Isn't there an implied condition that the ultimate consumer of this service is going to continue to require these services to be performed by artists? Otherwise, you'd have forever. There would be no time frame or no demand requirement. Isn't there an implied condition that there's going to be a continuing demand from GM to have these services performed? Well, in terms of the relationship with Artisan, perhaps, but in terms of our relationship, it was limited to the particular press projects upon which we bid. There was a formal request for quotation, and we bid on that, and it related to six press projects, if you will, and a series of components in excess of 100,000 pounds. So that was the confines of our relationship. Were there specs for the bidding that went out to other carriers besides Emert? Well, we assume so. It was a competitive bidding process. So are those specs any part of this contract between Emert and Artisan? Of the other carriers, no. No, the specs that went out to your client? No. Well, there's a big package. Is that what was the result of the specs? I'm not sure what you're referring to as the big package. There was a thing called a request for proposal. A request for quotation. Excuse me, a request for quotation. That was from Artisan to Emert, and we presume others, seeking quotations on moving those particular components that were referred to in that request for quotation. And if you look at that document, you'll see that the weights are listed. So you'll see that lined through in that document, where it relates to Emert, are up to 100,000 pounds. And then obviously other carriers were going to be moving the remainder of the components. Can you say that's not part of your contract, the terms of the RFQ? No, no. The RFQ plus the bid that Emert gave plus the 24 words on the contract letter. So that is the integrated contract. Correct. So in other words, it's the 100,000 pound things that we are entitled to. And was the RFQ put in evidence? It is in evidence. It is in evidence. Yes, it is. Yes. All right. It seems like you're focusing on the lost profits aspect, and I hope I answered your questions. But I do want to talk about the statute of limitations issue as well. The district court concluded that 49 U.S.C. 14705 was the controlling statute of limitations. And what we have is a state law breach of contract claim, and our view is that it should be governed by the state law statute of limitations, which is longer than the one listed in 14705. Why should that be done? In looking at that statute, if you take the word charges out of context, then you will conclude that that statute should apply. But that's not the way one reads statutes. You look at the context of the statute, even when you're looking to seek the plain meaning. Here, the context was a context of deregulation of transportation, not trying to assert federal control, but taking away federal-related things. 14705 uses the term charges for transportation. And charges in that statute and throughout the Motor Carrier Acts, throughout the time, meant charges under a filed tariff. And that's because the only charges that ever existed were charges under a filed tariff until the deregulation efforts started. Why do you say that this should be applied under state law? The very small contract that you have here, in which you now say is integrated with the RFQ and another document does not specify state law. There's no choice of law paragraph here. It does not, but there's nothing under the – are you suggesting that the federal statutes would apply here? Well, you're the one that's answering questions. I'm just asking you. You have said that state law applies. Yeah, that's a breach of contract. Okay, so my question is, what state law applies? And on what basis are you saying that? Well, first of all, I'm saying that substantive state law applies in terms of analyzing what substantive state law? The basic law of contract. But which one? Michigan? Oregon? California? Well, we didn't address that issue, but we assumed. Well, you've got to pick something. You're going to say that it's state law. Right, but we assumed Oregon, that the contract was entered into in Oregon. Well, was it? That wasn't discussed below. Was it? The contract, this document, presumably came from Michigan. It was – I don't even see a signature here. This may be a unilateral contract in the sense, although I suppose if you combine the RFQ with this, it would be two signatures. But you've got a whole choice of law issue here as to which state law applies if you're going to apply state law, whereas with the Interstate Commerce Commission, you're talking about nationwide transportation that seems to fit within the confines that the district court found that it fits. I think you're going to have to tell us why state law applies and what state law applies if we're going to even consider this part further. Well, the issue wasn't addressed in terms of the actual substantive state law. What the district court did was say that federal law applies to federal statute of limitations. Right. You're telling us state law applies, so I'm saying which state law? Well, the – When you talk about district court, there was a six-year statute of limitations. You must have been referring to statute of limitations in some state. Yes. Well, we were referring to Oregon's statute of limitations. It wasn't, though, detailed by either of the parties or by the court, but that was the assumption that was made. So getting back to why we don't believe the federal statute of limitations, 14705, applies is because the phrasing in there always related to filed tariffs. And the legislative reference – and so Congress knew what the word charges meant when it went about changing the statutes. And nowhere in any of the statutes or the legislative history does it suggest that charges means anything other than charges under a filed rate. There's simply no discussion in the legislative history. The references in legislative history, as brief as they are, actually refer to filed tariff-related language. It suggests overcharges and undercharges, which is filed tariff language. The subsequent statute, 14705, the legislative history that relates to that, says we're maintaining the statute of limitations as before. Had Congress meant to change the language, the meaning of the language as it had existed, it would have said so. In addition, the basic statutory construction would be to attempt to construe, to avoid what I called earlier preemption. Preemption being, in this case, the conflict between the federal statute of limitations and Oregon's contract statute of limitations. Under Artisan's construction, you need to find a conflict. There's no question but that there's a conflict there. We only have two minutes. Do you want to save it for rebuttal? I'm sorry? Oh, yes, I do. Thank you, Your Honor. Good morning. Today I'm appearing on behalf of Artisan Associates, Inc. This is a three-count complaint that remained after the trial court following an amended complaint in the trial court. We believe, as we've said in our brief, that the emirate did not preserve this issue that counsel has just articulated to the court as the file rate tariff. Nevertheless, there's no question in this record that we're dealing with transportation and interstate commerce, that emirate came under that law. But, Congress, you're only talking about the first two counts? Excuse me? You're speaking only of the first two counts? I am, as to, I'm getting to that, Your Honor. No, no, I just want to know, this part of your argument relates. I think that, Judge Reinhart, they're ultimately, as to the legal issue that the appellant has brought, are connected. The first two counts are for the transportation or services under the rule that begins general and then it goes to the 18 months. And that was what Judge Brown said was counts one and two, the breach of contract and the quantum merit, for the transportation or services that came within the broad scope of the federal law. I understand. I'm just asking, is that what you're arguing here? This part of your argument is addressed solely to counts one and two. Is that right? Yes. That's all I want to know. Counsel, was there any choice of law language in the RFQ? I think that the court has an understanding of what the contract in place today is. Congress, as they worked through multiple transportation issues in the mid-'90s, had three acts, the Trucking Industrial Regulation Reform Act, the so-called TIRRA. There's the Negotiator's Rates Act in the mid-'90s. And the third act was the Interstate Commerce Commission Termination Act in 1995. That's the one where they didn't stop regulating trucking in the United States. All that did is said that the rates would be negotiated between the shipper and the carrier. There's a section that says even after that, though you don't have to file them in Washington, you still have to provide the shipper with the basic information or 13.710A and so forth. But it's also, I think, very instructive that the statute at 14.101b.2, after giving the parties the right in one to contract, to negotiate, such as the parties did here, it says that the jurisdiction will be either a state or a federal court. Does the statute give the parties the right to choose to be governed by state law? Only in some respects, Judge Smith. Now, what are those? For example, that there's no question that if you're in interstate commerce in the trucking business under 13.901, you have to register. There are certain insurance, other requirements that were not waivable. But 14.101b.1 specifically says the parties negotiate a contract. That's different than the law from 1935 to 1995, where they filed tariffs and there was an ICC. Though the ICC went away in 1996, the Service Transportation Board is still the substitute, if you will, the successor for all the controls, so that what it says is you can waive certain things. And if one of them you can waive under that provision is a statute of limitations. One of the cases we gave the court talked about that, where the parties, in fact, had a 12-month period to file instead of the 18 months under 14.705a. And your position is that there was no agreement between the parties as to what the statute of limitations might be? Yes, it is. And they had the right to. That was a new deal. And these people in 1996 and 1970, when this transportation was going, simply didn't get into, obviously, with that contract in place, didn't get into any of those details. Although, as of January 1, 1996, they had the right to, just as the court did in the Central Transport v. Schuetz case. And we believe the other part of it is that in a state court where the federal law has, there's a conflict between the six-year Oregon statute of limitation and the 18 months the Congress has had. Before 1996, it was a three-year statute. There's good legislative history through there that says they want to continue that. That's why we continually will go back to the language that the Congress in the interstate, the so-called ICTA, it says, and it's a general provision, if it meant to be those in the household goods or non-contiguous, which is section 702, it would have put the statute there. This says general, all charges for transportation of services, and the court has the statute. Okay. I'd like to, if I may, focus on this particular transaction. I understand your point. The law had changed such that the parties were at liberty to choose a different statute of limitations than the one that the district court focused on here. Yes, sir. Counsel for your opponent contends that you did either directly or indirectly pick the law of the state of Oregon. Do you know of anything in the record that would suggest that the parties ever contemplated any such thing? None whatsoever, and it's the federal statute under the federal law, says particularly at 14101B1 that you may waive it, and if you don't waive it, the federal law, the uniformity, all the reasons to the government has controlled interstate trucking since 1906 remain in place. Does 14101 require a written waiver as far as all the subsections you talked about? In other words, if the parties are going to waive the federal statute of limitations, do they have to agree in writing what other statute of limitations is going to govern? I think the statute, and there's a, I don't know if the statute of wording is such, but it's an explicit waiver. You have to be very specific, I believe, under the language of that statute. Do you have the statute there? Can you read the relevant portion to us, please? 14101B1. After it allows the parties to enter into a contract, I quote, if the shipper and carrier in writing expressly waive any and all rights and remedies and so forth, and I think that's the answer to your question. Okay, so according to your construction of that statute, 14101B1, unless the parties agree in writing to waive the federal statute of limitations, then the federal statute of limitations would apply. Yes, sir. Is that correct? Yes, sir. Okay. And we think that the statute, 14705, is quite clear in these circumstances. Let me go back to see if I can get clear about what I was asking. As I understand this case, your opponent's position is simply that the federal statute doesn't cover the first two counts. The third count, as I understand it, nobody's claiming the federal statute covers it, and that's clearly decided under State law. But as to the first two counts, the issue before us is whether the federal statute applies, in which case the federal statute of limitations applies. Correct. And I think it's a good example of the cases, if you read them, post-January 1 of 1996, where the federal law has trumped, if you will, a State statute so you don't have quorum chopping. If the federal statute applies to counts one and two, you win. Correct. Okay. If it doesn't, then clearly we're back to State law. If it does not, then we would have quorum chopping and so forth. And the third count, which is what's meant. The third count, everybody agrees that the question is State law. Yes, sir. Okay. If the Court has no other questions, I have nothing for you. Thank you. Thank you very much. I just have a little time. So to address the preservation issue initially, this is a pure question of law. No dispute about that. There's no prejudice in development of the record below. It is a question of first impression here whether this federal statute applies to an ordinary commercial relationship, you know, that I'm terming a regular old State law contract claim. And the Court has discretion to address and should undertake that discretion because of the fact that it's a federal statute and it should be interpreted properly to see whether, in fact, it applies to this sort of an arrangement or not. The Emmer case has been cited by other district court cases. There are now other cases coming out on this particular statute, and this Court should take the opportunity to say, from our perspective, this statute does not govern this relationship. Counsel, did you, in your reply brief, argue that the issue of the federal statute of limitations was raised for the first time on appeal? We did not make this. We argued that the statute of limitations did not apply, but in terms of what we have told you in our briefs and what I told you today about the tariff interpretation, that was not raised to the district court, and that's why I suggest that it is something important, and it's a federal statute that needs some interpretation there. You've said that the federal statute didn't apply in the district courts, but only for one of the two reasons you're advancing here. Correct. Correct. Correct. Counsel also mentioned 14-101, which Judge Smith asked about, and he read that language. But it's important to note that it talks about waiving rights or remedies, and to submit to you that a statute of limitation is not a right or remedy, and the rights and remedies under the Transportation Act are actually set out under headings called rights and remedies, and the statute of limitations is not there. You're not claiming that anyone waived the statute of limitations, right? I'm sorry? You're not claiming that anyone waived the statute of limitations? No, no, no, no, no. What I think counsel was trying to say was that if it's not expressed in writing in a state law contract situation, then the federal statute would apply, and I submit otherwise. But in your case, though, if the statute applies at all and there is no writing, then the statute of limitations would likewise apply, and as to the first two counts, you would lose, right? Yes. If you find the federal statute of limitations applies, we lose. Right. And if the federal statute applies, then the federal statute of limitations applies. Well, there is no federal statute to apply here. Or maybe I'm misunderstanding what the Court is saying. No. As to Counts 1 and 2. As to Counts 1 and 2, I don't think either side is suggesting that there is a federal statute, a federal law out there under which we could bring our claim. And the reason I say that is because of those cases that we cited, which suggest that there is no federal question jurisdiction now, that there are no filed tariffs. There is no federal question jurisdiction in federal court when that requirement is not there. So these, the cases indicate that these are all just breach of contract cases. So there's no federal statute. There's simply a federal statute of limitations here. Okay. Now, I did want to quickly mention. That's your basic argument in this case on the first two counts, is whether you're subject to the federal provision. That's exactly right. And the bizarre result is that there's no federal law, there's no federal statute under which we could bring the claim, but we're being asked to abide by the federal statute of limitations. And I did want to quickly mention, counsel mentioned section 13708, excuse me, he mentioned 13710. And I believe he mentioned it to suggest that my interpretation of the word charges is incorrect, but I would urge the court to contrast 13708 with 13710. And I think you'll see what I'm talking about there, which is tariffs under the statute currently apply only to household goods, transporters, or noncontiguous domestic trade. And that is in 13710, where it discusses no mention of the word charges in that context. And in 13708, charges are specifically mentioned where those tariffed carriers are not mentioned. And I make that point to suggest that the word charges throughout the statute is still consistent with meaning only charges under a filed tariff, and there's no dispute there is no tariff in this case. All right. Thank you. Thank you. The case that's argued will be admitted. The court will stand in recess.
judges: Goodwin, Reinhardt, M. Smith